Good morning, Your Honors. May it please the Court, my name is Suma P. Sapati and I'm here on behalf of Appellants. I'd like to reserve three minutes for rebuttal, please. Your Honor, this... Why don't you wait for them to get seated, if you wouldn't mind. Okay. Okay. Your Honors, this case basically involves two violations of federal law. Number one, GE's power plant will cause an increase in pollution that is three times the federal limit for particulate matter. Number two, GE did not provide legal emission reduction credits to offset the pollution from its facility. Could I, before we even get there, could I ask you a threshold question? Sure. Are you appealing the entire action as IEEC claims, or just the claims that were dismissed by the district court pursuant to 12b-6? We're appealing two orders. We're appealing the trial court's decision on GE's motion to dismiss, and we're also appealing the trial court's decision on our motion for preliminary injunction. And only with respect to IEEC, or also with respect to South Coast? The preliminary injunction sought relief from South Coast, specifically rescission of the permit. So that is why the South Coast is also named. And can you get relief versus South Coast if you don't have any claims against them? The claims against them are gone and not on appeal? Yes, because the permit is what allows construction to occur. So it's fully connected to the harm that GE caused by its violations. But you have no cause of action against them anymore because those two claims are gone. Right. So they're not. Right. But the relief involves the South Coast. But you can't show likelihood of success on any claim against South Coast? Well, Your Honor, we're not appealing the claims against South Coast because we dismissed them. So we're just appealing the claims against – we're just actually appealing the two orders, or the one order on the two motions, motion to dismiss and preliminary injunction. Okay. With respect to the pollution limit claim, even though the plain language of the federal rule, the SIP rule, applies the pollution limit to the facility of the whole, defendants ask the court to instead apply that limit to each source at its facility. Under defendants' view, they could literally build 100 different sources at their facility. And so long as each one of those sources remains below 2.5, they're going to claim compliance with the law. And, of course, defendants' view makes no sense. Did you have a question? I do, and it's another sort of threshold question. Okay. IEC says in their brief that, and you don't disagree, that you're not claiming that you can use a citizen suit to collaterally attack a Title V permit. Is that correct? Is that your position? You're not – you agree that a citizen suit couldn't collaterally attack a Title V permit? So, in other words, you couldn't say that a Title V permit is inconsistent with federal law via a citizen suit? We are not attacking the Title V permit here, Your Honor. We're attacking the Title I permit to construct. Now, okay, so you don't disagree with that statement about a collateral attack, or you just aren't addressing that. But these Title I requirements were rolled up into their Title V permit. Assuming that, if we assume that we are deeming their Title I requirements to be part of the Title V permit, would you be able to challenge them via a citizen suit? Well, I guess that's the point I'm trying to make, Your Honor. The Title I permit is separate from the Title V permit. There is no merged permit. Well, it's in the same document, right? It's simply – the only thing that's been merged here is the physical document, which contains the permits to construct, all in one section, Section H, of the permit document. Again, both the Title V permit and the Title I permit are contained in the same physical document. There is no merged process here. The EPA approved the document, or did it only approve a piece of that? What did the EPA's approval say? The EPA's approval was of the Title V portion of the document, not the Title I. And, Your Honor, with respect to the collateral attack issue, all of those collateral attack cases that the defendants point to are not Ninth Circuit cases, and they're inconsistent with the Grand Canyon Trust case, which clearly states that the citizen suit provision is the proper vehicle for enforcing pre-construction review in federal district court. But the Grand Canyon case, it wasn't a question as to whether the permit complied with federal law, right? The issue there was that the entity didn't have a permit that it had expired when it went to construct. Our case is virtually identical to the Grand Canyon Trust case. In that case, what happened was the permittee did not comply with federal regulations, EPA regulations, governing the validity of the permit. But there was no ‑‑ Was there any claim that the permit that Grand Canyon had was invalid, that it didn't meet the federal law? Absolutely. In fact, that's ‑‑ What was the ‑‑ the permit wasn't noncompliant with federal law. It was that it had lapsed, I thought, in that case. It was because federal law that governed the validity of the permit required construction by a certain time and placed an implicit condition on the permit that required construction to occur within 18 months of issuance. That was not complied with. And the challenge was that the condition was in violation of federal law? That the challenge was that the defendant in that case was constructing its facility with an invalid permit because it did not comply with the federal regulations governing the validity of that permit. But the infalidity was that the permit wasn't then in effect. Isn't that right? The infalidity was that the defendant did not comply with the requirements governing validity of that permit. Right. But it wasn't ‑‑ the challenge wasn't that the permit itself was invalid. Yes. It wasn't that the permit itself was noncompliant with federal law. Nobody challenged the terms of the permit and said the terms of the permit are noncompliant with federal law. Right. There was no ‑‑ just as in this case, there was no claim that the defendant had failed to comply with the face of the permit. Here we're not claiming that the defendant has failed to comply with the face of the permit. What we're claiming is that just as in Grand Canyon Trust, the defendant has failed to comply with the conditions, pre‑permitting conditions, application adequacy conditions, permit eligibility conditions, you can call it any of those things, but there are preconditions to permit issuance and that GE had specific obligations under federal law to provide the requisite modeling, to provide the requisite federally enforceable offsets before it was even eligible for permit. So back to the collateral attack issue, none of those cases that GE raises involves a permittee that failed to comply with its own permitting requirements, with its own application adequacy requirements or eligibility requirements, which is the case here. I didn't see any case claiming that a Title V permit, that the provisions of the Title V permit violated federal law, which is what I understand you're claiming here, that certain provisions in their permit are inconsistent with the SIP, which is federal law. I didn't see any case holding that a person could challenge the title ‑‑ the terms of the Title V permit as being inconsistent with federal law via a citizen suit. Is there such a case? Your Honor, we're not challenging the Title V permit. We're challenging ‑‑ we're challenging the preconstruction permit, the construction permit, for failure to comply with preconstruction review. And under the Grand Canyon Trust case, there is an ‑‑ under the statute itself, the citizen suit provision, that is expressly contemplated that ‑‑ it is expressly contemplated that plaintiffs bring this type of action in federal district court. And the reason is, is that preconstruction review is the heart of the Clean Air Act. It is what ensures that sources and new facilities and modifications of facilities are designed to be clean before they even start breaking ground, before they even start construction, let alone before they stop ‑‑ start operating, which is when Title V kicks in. And so ‑‑ and because it's such a critical aspect, there's an immediate right of enforcement, of citizen enforcement, as private attorney generals, allowed by the citizen suit provision. Does that answer your question? I don't even know that I saw a case using a citizen suit to challenge a permit to construct that hadn't been rolled up into a Title V permit based on the question as to whether the provisions of the permit to construct violated federal law. I just don't think I've seen that. I mean, I've seen claims going against the permittee for constructing without a permit, which is how I understand the Grand Canyon case. And I've seen challenges to an entity who's violating the terms of the permit. This is exactly the case, the CBE case, the CBE v. Senko case, very similar issue. There was a claim of failure to comply with preconstruction review requirements, NSR requirements, in the same rule, 1303. The court, the Ninth Circuit, affirmed that CBE decision. And also, with respect, again, coming back to this Title V issue, in Grand Canyon ‑‑ in Grand Canyon Trust, in the section entitled jurisdiction, the Ninth Circuit, this court specifically stated that defendants in that case argued that plaintiffs should have taken their case to the EPA and engaged in administrative appeal. And the Ninth Circuit in that case specifically stated that the defendants' argument requiring ‑‑ asking plaintiffs to go to the EPA with their concerns ignores the citizen suit provision, ignores the fact that the citizen suit provision expressly allows preconstruction review claims to be brought in federal district court. Well, there the claim was they were constructing without a permit that was then in effect. So ‑‑ For failure to comply with federal regulations governing that permit. Same issue here. If I could come back to ‑‑ Could I squeeze in here just a minute? I'm concerned about our appellate jurisdiction. The second order was not dismissed with prejudice, as Judge Liu did in the first order. So ordinarily, if you have one that's dismissed with prejudice and the other gives you the opportunity to refile a complaint, we don't have jurisdiction over that hearing. How do we get jurisdiction here? Well, Your Honor, plaintiffs follow the instruction provided by this Court in both the James and Dastar cases. And the question there, so the only remaining question is whether there was any evidence of manipulation of appellate jurisdiction. And there is no such evidence here. Let me ask you about some things that occur in the record which may or may not be considered evidence. When counsel goes in to secure the second one, presents an order to the judge saying that this is the law of the case, what Judge Liu has done, but then asks for the same thing to be done. But in the order that's presented by counsel, it doesn't present the law of the case, because the law of the case, to the extent there is one, is a dismissal with prejudice. But counsel in this case didn't follow the law of the case, had just a dismissal, which was a dismissal without prejudice. Doesn't that show that there might have been some evidence that this was being formulated in such a way that regardless of what happens on appeal, the plaintiffs can go back and sue the district? Well, Your Honor, just to clarify the record, if you look at the sentence that the district court struck from that proposed order, we asked for dismissal with prejudice. And by removing that language, we asked for the same application to GE's motion to dismiss to be applied to the South Coast claims. The court granted us dismissal without prejudice. Is it theoretically possible to resurrect claims against the Air District? I suppose so, but we have no intention to. And if we're able to get full at this point, we have no intention to. If we're able to get full relief from GE, we won't need to. Well, maybe I don't see well in my declining years, and this has been struck. But where does it say that you're asking for a dismissal with prejudice in the struck language? We asked the struck language states asks the court to apply the law of the case doctrine to the remaining claims, which would have meant, implicitly, means prejudice. Precisely. That's my point, that in the part of the order that's prepared for the judge, it says unpose application for voluntary dismissal. That's the point. The point says that you're going to take law of the case, which is a dismissal with prejudice, but then you apply the law of the case and don't ask for dismissal with prejudice. You ask for a dismissal. Isn't that some evidence that would come under the James rubric? No, Your Honor, because the reason we sought – because under James, dismissal without prejudice can constitute final judgment if it's in the interest of judicial autonomy, which is exactly what we – Now, you're missing the James point that you pointed out, is if there's some evidence – if there's some evidence of manipulation, then James doesn't apply. James is a very small exception to what has been considered for countless generations to be the requirement to come up on appeal. But, Your Honor, we don't need those claims. There is no manipulation here. That may be. I'm just saying, is there some evidence? Now, on page 21 of the red brief that was filed by Latham and Watkins, in footnote 8, it indicates that there was a meet-and-confer conference between plaintiff's lawyers and defense lawyers, at which time the defense lawyers asked that there would be a dismissal with prejudice, and the attorney for the plaintiff said no. They wanted a dismissal without prejudice. Actually, Your Honor – Is that an accurate representation of what occurred? I got a phone call from the South Coast Air District's attorney asking why we had filed our appeal. This was January of 2007, after we had already filed our appeal. Defendants did not oppose our Rule 41 motion in the lower court. And had we known that they were going to oppose it for the first time in appeal, maybe we would have engaged – we definitely would have engaged in a duplicative round of briefing on the issues that the court had already decided on in GE's motion to dismiss. Is there anything – this footnote 8, is there record to back that up? Is that actually what occurred? Yes. January of 2007 is when I got that call. You can ask the Air District when they called me. So when counsel had had a met and confer, knew the defendants wanted dismissal without prejudice, but the plaintiffs wanted dismissal without prejudice, defendants wanted it with prejudice. And then we come into the court for the second one. It seems to me at that point it's clear that the plaintiffs – there's some evidence the plaintiff wanted a dismissal without prejudice. Excuse me, can you repeat that? I'm just saying that you've indicated there's no evidence of manipulation. And I'm just suggesting to you that I don't think that's accurate. There is some evidence of manipulation. And I wanted to have you respond to whether or not that's an accurate determination of what took place. And if so or if not, how do we deal with that as to whether or not we have jurisdiction? Because as I say, James is a very limited exception, very limited exception. I mean, I taught federal jurisdiction long before the author of the opinion wore a black robe. And – Well, in fact, with all due respect, Your Honor, the – there is no – there was no intent to manipulate – there was no manipulation of appellate jurisdiction. We cannot continue with our case in the lower court. Under the trial court's decision on the motion to dismiss, our entire case was done. It would have been futile to continue litigating in the lower court. And defendants didn't disagree at that time. And by the time they raised this concern, when we had already filed our appeal, it was too late. We were already in the middle of our appeal. And as the Court knows, we were seeking a preliminary injunction. It was important to move forward as quickly as possible to make sure that the plan gets as clean as possible before construction ends and before it actually starts operating and creating the harm that we're concerned about. That's the whole point of pre-construction review. And that's why the citizen suit allows for an immediate right of action in federal district court to prevent the harm from occurring. Now that the federal – Is there any way that the prior order can be modified to make it a dismissal with prejudice? By this court? Not by us. I guess by the district court. Could we remand and ask the district court to do that if the parties stipulated to it? I suppose that's possible, Your Honor, but we gained final judgment in the lower court. And to force us to go back and then, you know, refile an appeal loses precious time when the facility, again, is in the midst of construction. We followed the instructions given by this court in both James and Daster. We don't believe it's necessary at this point to get another final judgment. You're out of time. But you can have a minute for rebuttal if you like.  Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Robert Wyman of Latham & Watkins on behalf of Inland Empire Energy Center. With permission of the Court, we'd like to divide our time so that I would take, on behalf of Inland Empire, approximately ten minutes to address the jurisdictional questions. And Mr. Hogan, on behalf of the Air District, will spend the remainder of the time addressing any questions about proper interpretation of district law and the State Implementation Plan. I'm wondering why the Air District is here, if they're out of the case from what Romoland is saying. Well, Your Honor, having heard what I just heard in oral argument, I have the same question. My understanding was that the plaintiffs were bringing this action, this appeal, on all issues in the case because they believed that the lower court had, in fact, dismissed the case on issues that would relate both to the district and to Inland Empire. Wasn't the notice of appeal? Didn't it join both cases? That was my understanding, Your Honor. And if I could, Your Honors, I'd like to address the questions you asked during the last opening argument. I think they are the crux of the case, and there are a few of them, but I'll go quickly through them. The first question, Judge Okuda, was the one that you asked about the scope of the Title V review. I believe under Section 505 of the Clean Air Act, the law is very clear that EPA has a mandatory duty to evaluate all of the subchapter 1, that is the pre-construction Title I issues, as well as all other applicable law that comes before them in a Title V permit. As that section provides, and I think it is dispositive here for reasons that I'll explain, it says if any permit contains, this is 505B1, if any permit contains provisions that are determined by the administrator as not in compliance with the applicable requirement of this chapter, which is the entire Clean Air Act, including requirements of an applicable implementation plan, which would also be all-encompassing, the administrator shall, in accordance with the section, object to its issuance. That's Section 505B1. Now, if that is a proper interpretation of the EPA's scope of review of the permit that it received, it seems to me that Section 307 is quite clear that if review is permissible on a direct challenge to an administrator action, or in this case, a failure to act, had it been petitioned, that review lies exclusively with the circuit court and may not be brought to a Section 304 enforcement action in U.S. District Court. And that, Your Honors, is why we believe there is no jurisdiction in the U.S. District Court. Breyer. You're basing this on a lack of exhaustion? No, Your Honor. It's a jurisdictional question. I believe that the plaintiffs properly state the exhaustion law when they say that if there were jurisdiction to hear a dispute in district court, all plaintiffs would have had to do to satisfy that jurisdictional requirement is to file a 60-day notice, which they did. Argument is different. Argument is that they cannot bring a challenge to the preconstruction, that is, the Title I provisions, of a Title V permit in the U.S. District Court as an enforcement action. And that is precluded expressly by Section 307, because EPA has a mandatory duty under Title V to look at all those issues. Now, your adversary indicated that she was not going, she was not proceeding under Title V, and therefore that's irrelevant. What's your response to that? Well, I believe there are several factors you can look to, both legal and factual, that would rebut that, Your Honor. You can see the language that I gave you, which gives you the confirmation of EPA's scope of review. You can look at the 1992 regulations, which we cite, by which EPA specifically invites a State, in fact, we believe encourages a State, to include the preconstruction portions of the permit in the Title V permit. You can look at the 2001 approval by EPA of the South Coast Title V program, which very clearly indicates their intention to do just that. You can look at the review they undertook of the Title V permit when it was submitted. You could test the proposition by asking the appellant during the next rebuttal whether it was their position that EPA lacked the authority to object based on Title I preconstruction grounds. My belief is, Your Honor, that if they had petitioned EPA, as this plaintiff ‑‑ as this appellant has done in other cases, they would fully expect EPA to review the Title I provisions of that permit, as they did in the petition that we filed. Now, admitted in that petition, that was not a merged permit, as this one is. But I think it's unquestioned, Your Honor, that these plaintiffs, if they had filed the petition before EPA, would insist that the scope of EPA's review is as we have stated it to be, that it is not severable, it includes every element of the chapter which is applicable. If a State decides to include those in the Title V permit, they are expressly permitted by the statute to do it, by the EPA regulations, by the approval of the State plan in this case. There is absolutely no legal or factual indication otherwise, Your Honor. Well, it makes some sense to give an opportunity to challenge before you get all the concrete poured. But I think your argument is that they have to challenge it that way. That's correct, Your Honor. And if you consider why that's true, if they did not have to do so, if you consider this case, they brought the case in the district court, and you are now hearing the issues as to the appropriate interpretation of Title I, those elements of the permit, had they also petitioned EPA to veto the permit, they could be before this court also. So plaintiff's interpretation, which is, of course, the whole reason why Congress prohibited this in Section 307, is that you could be before simultaneous panels of this circuit at the same time on the same issues. And that clearly cannot be the case. What case would you rely on to indicate that failure to do that robs them of any jurisdiction? I apologize, Your Honor. I'm not sure the theory is true. Well, in most jurisdiction issues, there's some case someplace that said there's no jurisdiction. Well, Your Honor, to my knowledge, this is the first case in the United States I was afraid you were going to say that. Well, let me ask you a couple of questions about that. One is, assuming that we agree that the Title I conditions were rolled up into the Title V and approved at the EPA and the 7661D applies, is there statutory language, and I don't believe there's a case, but is there statutory language or what would you rely on to say you can't use 7604, you can't use the citizen suit to challenge collaterally the Title V permit? Well, I think there are cases that say that as to preconstruction permits. There's the National Parks v. TVA. There's – there are several district court cases that say that, Your Honor. And I'll get in a minute to the two cases that same cover the Grand Canyon Trust, which I think you have properly characterized as being lapsed cases and not in truth a challenge to a collateral permit. But I'm not aware of any that say what you say. And there's – so the statutory language you would rely on would be there's a system in set up in 7661D for a challenge and the 7604 citizen suit is inconsistent with that or? It's not only inconsistent with, Your Honor. I believe it is expressly precluded because of the language of Section 307, which says that if a – if review can be obtained through a challenge to the administrative action, I have the language if the Court would like me to read it, an enforcement action may not be brought to review the same issues. And that's why we submitted the Senate report to you, Your Honors, because the Senate report, if there's any doubt – Well, what language – could you refer to that specific language? Yes, sir. Section 307b2, and it reads, action of the administrator, which in this case is the approval of the permit, with respect to which review could have been obtained under Paragraph 1, shall not be subject to judicial review in civil or criminal proceedings for enforcement. And then the Senate report that we submitted, Your Honors, looks at that language in Title V and very clearly draws the link between that and a citizen suit, which might otherwise have been brought to collaterally attack the permit. If I may, Your Honors, quickly on – I've already mentioned our view on Grand Canyon Trust and Sanko. Both of those were cases of lapsed permits. We can go into more detail if you'd like, but they very clearly were not, on their facts, cases that were collateral attacks to permits. On the one final judgment rule, Judge Wallace, I did want to indicate, as you know, our view on that. There's some facts, perhaps, that aren't before the Court that we've alleged just are, I think, helpful here, and that is that you may wonder, as the appellant said in the reply brief, gee, Inland Empire should have objected when we sought our dismissal before the lower court. Well, we were no longer in the case, Your Honor, and we were not provided of any notice. So we didn't – we were not aware of that time, and the district at that time had not made us aware that the request for dismissal was without prejudice. When we learned of it from the district, Your Honor, we assumed it would be with prejudice. So it seems to me that that explains why it was only when we filed the motion, that's when we learned of it, Your Honor, and we brought the motion as promptly as we could. Unless there are other questions on the jurisdictional issues, I'd like to reserve the remainder of the time for Mr. Hogan from the administration. Let me just ask you this one question on jurisdiction, not on your theory that the permit can't be collaterally challenged, but just on the issue that Judge Wallace in his questions was raising about whether we have a final order and whether James applies. Here, what's GE's position today as to whether there's significant evidence of manipulation in the record? Your Honor, it would be difficult for me to characterize it as significant, but I need to say that Inland Empire's position is that because unlike James, the claims in this case are not severable and independent. There is a risk that this case, we could, Inland Empire could prevail before this Court and the appellants could still bring a case that would in essence have obtained the same relief for them against Inland Empire by proceeding against the district. When we sought an appeal with dismissal, excuse me, a dismissal with prejudice, that would have in our mind precluded any risk of manipulation. When that request was rejected, it led us to believe that, in fact, that risk was real. And that is why we filed the motion before this Court. But there's no stipulation, as there was in some of the other cases, that you would keep those claims open and that the statute of limitations or whatever wouldn't run? Absolutely not, Your Honor. Okay. Thank you. Good morning, Your Honors. Bradley Hogan for the South Coast Air Quality Management District. I'm going to spend most of my time talking about the merits of the case which have been presented to this Court by way of the preliminary injunction motion, which  Inland Energy's motion to dismiss. But before I get to that, let me address some of the questions that have been raised by Judge Acuta and Judge Wallace relating to jurisdiction and the final judgment rule. The district is not properly here. The reason that we are here is because the plaintiffs purported to appeal the entire case under James on the theory that Judge Liu's ruling effectively gutted their case and became law of the case and had the effect of creating a final judgment. However, instead of dismissing the case with prejudice, which would have been the proper way to proceed, they attempted to have it both ways by claiming that the case was effectively over and yet dismissing the case without prejudice. After the case was filed and was on appeal, a notice of appeal including both the if the dismissal was without prejudice. How can there be jurisdiction if there's been no final judgment? And she cited the James case to me and explained that it was their position that Judge Liu had effectively disposed of the case, thereby giving them jurisdiction to appeal the entire case by way of this appeal. So those are the facts and the district's position in the law, and I'm happy to answer any other questions. Is the latter conversation someplace in the record? I believe it is in a declaration, yes, from me, that is attached to the joint brief filed by Inland Energy and the district in support of its motion to dismiss the appeal based on lack of jurisdiction. Okay. And that's part of that footnote 8 in the red brief? Yes, Your Honor, that's it exactly. Thank you. So having addressed those particular questions, let me move and talk about the merits. And, of course, there are two claims on the merits. The first relates to the district's issuance of offsets under Rule 1309.1 to the Inland Energy Project, and second, relating to the district's modeling performed under Rule 1303B. The district court's ruling was correct in all respects, and the preliminary injunction motion was properly denied and the case was properly dismissed because the plaintiffs have not stated a case claim for which relief can be granted. First, with respect to the offsets issue, there are two issues, two sub-issues within offsets. The first focuses on Inland Energy as a party, and the second focuses on the offsets that were actually issued. The first claim argues that the district unlawfully issued offsets to Inland Energy because the power plant amendment to Rule 1309.1 was not SIP approved in August of 2005 at the time when it was done. That argument is incorrect because under Section 116 of the Clean Air Act, the district is expressly permitted to adopt regulations that are no less stringent than existing SIP requirements under state law. You know, I see how that saves state standards that are more stringent from the SIP from a preemption argument, but that's not the argument they're making here. They're saying the IEEC didn't have all of the offsets it needed because it wasn't eligible as a matter of federal law. So I don't see how the fact that the new 1309.1 couldn't be, could withstand a preemption argument really helps in this case. Can you explain that? Yes, absolutely. 1309.1 wears two hats. It is a creature of both federal law under the Federal Clean Air Act, and it is also a creature of state law under the California Clean Air Act. And the district, in enforcing and administering Rule 1309.1, is at the same time enforcing both of those acts. So in some respects, the district has state law authority to adopt state law regulations that are independent, that have independent basis, and those regulations are valid as long as they are no less stringent than the federal regulations. They can be different than the federal regulations. And they will be considered valid as long as they are no less stringent. But they're valid as a matter of state law, but not as a matter of federal law. Isn't that right? That is correct. And that's the authority that the district used in order to issue the offsets was state law authority. It was not federal law authority. And it did not relax the existing requirements because the district did not in any way increase the amount of offsets that was available in the priority reserve. So if IAEC has a right as a matter of state law to those offsets, even though it didn't have a right as a matter of federal law. The action was valid. That's correct. It still has the offsets it needs. That's correct. Now, plaintiffs have presented this facile argument that because it wasn't SIP-approved at the time, it was invalid. But plaintiffs don't acknowledge or appreciate the purpose of Rule 1309.1. Restricting the list of eligible facilities under Rule 1309.1 was never designed as an emissions limitation. The offsets that the district holds in its internal banks are essentially public assets. They are offsets that the district has banked that can be used, and the district uses them to advance other public purposes that are unrelated to reducing emissions. For example, ensuring that offsets are available to permit sewage treatment facilities or police stations or innovative technology projects and so on. So as EPA confirmed in its responses to comments, comments that the plaintiffs submitted, the district has discretion within the Clean Air Act framework to choose who the offsets go to, because that does not increase the amount of offsets. And the offsets of the state law authority because it does not relax the federal law standards. It does not increase the offsets. The district had authority at the time that Rule 1309.1 was approved to issue all of the offsets that it had in its banks. That's the baseline by which one determines a relaxation of the standard. Whether the district gives it to a sewage treatment plant or a power plant or an innovative technology, it doesn't make any difference in terms of that standard. A pound of PM10 offsets is qualitatively the same whether or I'm sorry, a pound of PM10 emissions is qualitatively the same whether it is emitted from a sewage treatment plant or a power plant or any other type of source. What would happen if the EPA didn't approve? If the EPA didn't approve, the district would still have the authority under state law to administer it. But that didn't happen here, and it wasn't even remotely a possibility if you look at EPA's rationale in giving the approval. EPA said this is a minor amendment. It's firmly within the district's discretion to determine who these offsets go to. The only thing that we, EPA, and the Clean Air Act are concerned with is that these offsets meet the requirements of Section 173A of the Clean Air Act. That is, they have to be surplus, permanent, quantifiable, and enforceable. That's all that EPA and the Clean Air Act cares about. The district's decision as to who to give these offsets to is in no way will affect the stringency of the existing SIP program. Could EPA under that review have decided that this method used by the state is less stringent and therefore is invalid, less stringent than the federal program? Could they have? They could have, and if they had considered it to be less stringent, they certainly would have said that. Okay. They are empowered to approve. What they can't approve is something that constitutes backsliding under Section 110L of the Clean Air Act. So to the extent that EPA determined that it was less stringent and constituted a backsliding, they would not be able to approve it. So that's yet another example of how the plaintiff's view is utterly at odds with the district's view and with EPA's view. So it's at odds with every regulatory agency in this situation that has the authority and the experience to determine these issues. You're over time, so please just sum up quickly on the 1303B. On 1303B, the plaintiffs have seized on one word, the word facility in one sentence, in isolation of the rest of Rule 1303 and the entire permitting scheme that the district operates under. The entire permitting scheme is focused on the permitting and new source review of each individual source, which is defined as a piece of equipment, in most cases a permit unit, but in most cases a piece of equipment. Occasionally, there is a group of interconnected equipment that operates as one continuous process, but in the vast majority of cases, it's one piece of equipment, and that word source is used throughout Rule 1303. The district has consistently interpreted the rule in the way that it had been interpreted here. It has a long history of going back many years of interpreting the rule this way. The plaintiffs have presented no evidence in support of this interpretation other than taking this one particular word out of context. Thank you, Your Honors. Your Honors, I'd just like to emphasize that there is a separate application and permitting process for Title I permits under the SIP, and that's contained in Reg 13. There is a separate application and permitting process for Title V, and that's under SIP Reg 30. GE applied for both a permit to construct and a permit to operate under two separate regulations or separate processes that took place. Well, what do you say about their argument that 505B1 authorizes the EPA or requires the EPA to look at all of the provisions, all of the requirements, including those in Title I? There are multiple enforcement schemes allowed under the statute, and an EPA review is possible, but as this Court ruled in Grand Canyon Trust, just because EPA has the ability to review claims, defendants in that case raised the same claim, that the EPA should have reviewed the alleged violations in administrative appeal. And this Court said it doesn't matter because the citizen supervision expressly allows pre-construction review to be enforced in federal district court. And with respect to the priority reserve credits, there is an actual conflict between federal and state law here. State law allowed priority reserve credits. Federal law didn't. Actual conflict. Supreme Court and this Court both have ruled that in that case federal law prevails. Beyond that, the priority reserve credits are less stringent because they're much cheaper. They're about half the price of regular credits. Every other facility in the basin, every other new power plant had to buy credits at market rate. And so what happened here essentially is that the Air District gave GE a special incentive to build its power plant. And if the court actually gives its blessing to this arrangement every time the Air District wants to give special treatment to a specific company or a specific facility, all it has to do is propose a revision to the SIP, even better yet, a temporary revision to the SIP, which is exactly what happened here. The priority reserve program was a temporary program which expired before GE even applied for its permit to construct. So even when the SIP amendment occurred and EPA approved the priority reserve, that didn't end the violation. That just created a new violation, a new federal law violation, because GE didn't comply with the SIP revision either. With that in mind, I'm sorry to speak so fast. I have limited time. But with that, I think I'll conclude and respectfully request the Court to reverse the trial court's decision on the motion to dismiss and the preliminary injunction, and also ask the Court to reject, deny GE's motion for a request for judicial notice. And that's it. Thank you, Your Honors. This case is submitted.
judges: Wallace, Gould, Ikuta